**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RYAN POULLARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 05-1768 (HHK)** |
| | ) |
| **HARLEY LAPPIN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT OR TO TRANSFER**

Defendants respectfully move, pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively

12(b)(6), as well as 42 U.S.C. § 1997e, to dismiss the plaintiff's Complaint.  In the alternative,

defendants respectfully request that this Court enter summary judgment in favor of defendants

pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact, and

defendants are entitled to judgment as a matter of law.  Should the Court deny defendants'

motion to dismiss or for summary judgment, defendants request that the Court transfer this action

to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a), because transfer would promote

the interests of justice and the Court there would be a more convenient forum.

In support of this motion, Defendants rely upon the accompanying memorandum and

Statement of Material Facts As to Which There Is No Genuine Dispute.  A proposed order also is

attached.[1]

---

[1]    Plaintiff will take notice that any factual assertions contained in the documents in support of Defendant's Motion may be accepted by the Court as true unless plaintiff controverts them with his own affidavit or other documentary evidence.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), and LCvR 7, 56.1.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, DC Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, DC Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, DC Bar # 435409
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendants

---

As stated in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, may be entered against the
> adverse party.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RYAN POULLARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 05-1768 (HHK)** |
| | ) |
| **HARLEY LAPPIN, <u>et al.</u>,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
<u>**AS TO WHICH THERE IS NO GENUINE DISPUTE**</u>

Defendants Harley Lappin and Harrell Watts, employees of the Federal Bureau of Prisons

("BOP"), submit this Statement of Material Facts As To Which There Is No Genuine Dispute in

accordance with Local Rule 7(h).

1.  Plaintiff, Ryan Poullard, is an inmate at the Federal Correction Center in Beaumont,

Texas ("Beaumont").  Complaint ¶ 5.  He is serving a sentence of one hundred eighty-eight (188)

months followed by five (5) years of supervised release for Possession With Intent to Distribute

Cocaine Base in violation of 21 U.S.C. § 841(A)(1).  Plaintiff has a projected release date of

December 9, 2010.  Public Information Inmate Data (attached hereto as Exhibit A).

2.  Plaintiff asserts that he is a member of the Messianic Nation of Islam and the Ifa

Religious Community.  Complaint ¶¶ 8, 13.

3.  During February of 2005, the Chaplain at Beaumont instructed inmates to sign into

religious services with their committed name which is the name that appears on their BOP

identification.  <u>See</u> Complaint, First Submittal, p. 2; <u>see also</u> Declaration of Chaplain Jon Woods

("Woods Dec.") ¶ 3 (attached hereto as Exhibit B).

4.  On March 3, 2005, plaintiff signed into religious services at Beaumont using both his committed name, Ryan Poullard, and his religious name, Shangowande Orisha-nla.  See Complaint, Attachment C.

5.  Plaintiff has assumed the religious name Orisha-nla as a "surname substitute," or temporary name.  Complaint ¶13.  This religious surname substitute is not plaintiff's legal name. Id.

6.  Plaintiff failed to follow agency rules when he signed into religious services with his religious name.  An incident report was prepared, and plaintiff was sanctioned.  See Complaint, Attachment C and First Submittal, p. 2; Woods Dec. ¶ 3.

7.  On March 23, 2005, plaintiff filed an Administrative Remedy Request (Remedy No. 370051-F1), at the institutional level, seeking expungement of the incident report.  Declaration of Bruce Plumley ("Plumley Dec.") ¶¶ 2, 6 (attached hereto as Exhibit C).  Plaintiff signed this Administrative Remedy Request with his religious name only.  Id. at ¶ 5; Complaint, First Submittal, p. 2.

8.  Plaintiff's Administrative Remedy Request was rejected because it was not signed. See Complaint, First Submittal, p. 1.  Plaintiff was notified of the deficiency in the request.  Id. Plaintiff did not correct the deficiency.  Plumley Dec. ¶ 5.

9.  On April 10, 2005, plaintiff filed an Administrative Remedy Appeal (Remedy No. 373354-R1) with the BOP Regional Director.  See Complaint, Second Submittal, p. 2.  In this Regional Appeal, plaintiff challenged the rejection of his Administrative Remedy Request for failure to sign with his committed name.

10.  On April 20, 2005, that Administrative Remedy Request was rejected for several

2

reasons including the fact that plaintiff did not attempt informal resolution at the institution, and did not file an Administrative Remedy Request with the warden prior to filing the request with the Regional Director.  <u>See</u> Complaint, Remedy ID # 373354-R1, p. 1; Plumley Dec. ¶ 7.

11.  On April 25, 2005, plaintiff filed an Administrative Appeal with the Bureau of Prison's Central Office.  <u>See</u> Complaint, Remedy ID # 373354-A1, p. 2; Plumley Dec. ¶ 8.

12.  On June 6, 2006, this appeal was rejected for several reasons including the fact that plaintiff did not attempt informal resolution at the institution, and did not file a request with the warden.  <u>See</u> Complaint, Remedy ID # 373354-R1, p. 6; Plumley Dec. ¶ 8.  Plaintiff also was instructed to follow the directions provided by the Regional Office.  <u>Id</u>.

13.  On September 6, 2005, plaintiff filed this suit against Harley Lappin, Director of the BOP and Harrell Watts, the BOP National Inmate Appeals Administrator, in their official capacities.  <u>See</u> Complaint ¶¶ 7, 8.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR # 435409
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN POULLARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 05-1768 (HHK)** |
| | ) |
| **HARLEY LAPPIN, <u>et al.</u>,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### DEFENDANTS' MOTION TO DISMISS OR TRANSFER OR,
### <u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

Defendants submit that plaintiff's Complaint should be dismissed or summary judgement should be granted in defendants' favor because plaintiff has failed to state a claim upon which relief can be granted under the Religious Exercise in Land Use and By Institutionalized Persons Act ("RLUIPA"), because the act does not apply to federal prisons. Further, plaintiff's claim under the Religious Freedom and Restoration Act of 1993 ("RFRA") is without merit because plaintiff has failed to exhaust administrative remedies, and the policy plaintiff seeks to challenge is reasonably related to a governmental interest. Finally, even if plaintiff's claims survive the motion to dismiss or for summary judgment, transfer of this matter to the Eastern District of Texas is appropriate.

### I. <u>LEGAL STANDARD</u>

#### A. <u>Motions to Dismiss</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the court's jurisdiction." <u>Gardner v. U.S.</u>, No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), <u>aff'd</u>, 213 F.3d 735 (D.C. Cir. 2000) and <u>cert. denied</u>, 531 U.S. 1153 (2001) (quoting,

Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987)); see also 4 Wright & Miller: Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")  A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint. Herbert v. Nat'l Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; see also Cureton v. United States Marshal Service, 322 F. Supp.2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is appropriate if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle [plaintiff] to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46, (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  The Court must treat the Complaint's factual allegations as true, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."  Akintomide v. United States, 99-MS-0055, 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing Nat'l Treasury Employees Union v.

United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16

F.3d 1271, 1276 (D.C. Cir. 1994)).

A motion to dismiss is a proper procedural vehicle for adjudicating a plaintiff's failure to

exhaust its administrative remedies.  See e.g. Booth v. Churner, 532 U.S. 731, 741 (2001);

Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001).[2]

**B. Motion for Summary Judgment**

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of

---

[2]The failure to exhaust available administrative remedies requires dismissal.  However, how that dismissal is accomplished procedurally remains an issue of dispute among the circuits and has not been definitively addressed by the District of Columbia Circuit.  Some circuits have specifically held that failure to plead exhaustion constitutes a failure to state a claim under Rule 12(b)(6).  See, e.g., Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).  Other courts have instead dismissed cases for failure to exhaust based directly on the PLRA, which has been held to supercede the Federal Rules of Civil Procedure with respect to prison litigation and provide independent authority to dismiss.  See, e.g., Baxter v. Rose, 305 F.3d 486, 489-90 (6th Cir. 2002).  Alternatively, the Ninth Circuit has held that the failure to exhaust administrative remedies should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion.  See Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

The D.C. Circuit, however, has not adopted a particular procedure in dismissing suits for failure to exhaust administrative remedies.  In Jackson v. District of Columbia, 254 F.3d 262 (D.C. Cir. 2001), the D.C. Circuit vacated the district court rulings on the merits of an inmate's complaint and remanded the case with instructions to dismiss without prejudice for failure to exhaust.  The district court had ruled that PLRA exhaustion was an affirmative defense rather than a pleading requirement.  See Jackson, 254 F.3d at 265-66.  The D.C. Circuit did not reach that question, holding instead that exhaustion was mandatory and because plaintiffs failed to exhaust, the case should have been dismissed without prejudice and the court should not have ruled on the merits.  See Jackson, 254 F.3d at 270.

evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

- 4 -

## II. ARGUMENT

### A.  This Matter Should Be Transferred to the Eastern District of Texas.

Title 28, United States Code, Section 1391 (e) provides that:

[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

Title 28, United States Code, Section 1404(a) provides that:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The District of Columbia Circuit in Starnes v. McGuire, 512 F.2d 918 (D.C. Cir. 1974) (en banc) set out a number of factors for a District Court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside of the District of Columbia.  The factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C.  Starnes, 512 F.2d at 929-33.

Here, plaintiff is acting pro se.  He presently is incarcerated in Beaumont, Texas, and would have to be transferred to the District of Columbia for litigation of this matter.  The witnesses and files related to the matter are located in Beaumont, Texas.  Finally, the implementation of the policy at issue took place in Beaumont, Texas.  See Levitan v. U.S. Dep't of Justice, Civil Action No. 03-1916, slip op. at 4 (D.D.C. Aug. 12, 2004)("Because the implementation of policy is at issue, and because that implementation took place [in the

- 5 -

plaintiff's place of incarceration], venue is more appropriately laid [there]."); Meyer v. Federal

Bureau of Prisons, 9292 F.Supp. 10, 14 (D.D.C. 1996)(where alleged incident took place in

Springfield, Missouri; defendant resides in Missouri as do other prison officials; there is no

factual connection between the plaintiff's claim and Washington, D.C.; and plaintiff has not set

forth any reason why Washington, D.C. is a more convenient venue for the case, transfer to the

Western District of Missouri is in order.).  Therefore, this case would be most appropriately

litigated in the United States District Court for the Eastern District of Texas.

In addition, on February 14, 2006, plaintiff filed a Complaint in the United States District

Court for the Eastern District of Texas which addresses his "right to use his religious name."  See

Complaint, Ryan Poullard (Shangowande Orisha-nla) v. Rudy Childress, et. al., 1:06-cv-00082-

RHC-ESH, p. 3 (attached hereto as Exhibit D).  Hence, it is clear that transfer, pursuant to §

1404(a) would preserve resources and serve the interests of justice.

**B.  Plaintiff Has Failed to Exhaust His Administrative Remedies.**

1) Exhaustion and Administrative Requirements

Title 42, United States Code, Section § 1997e states:

[n]o action shall be brought with respect to prison conditions under section 1983
of this title, or any other Federal law, by a prisoner confined in any jail, prison, or
other correctional facility until such administrative remedies as are available are
exhausted.[3]

The Supreme Court has stated that "[e]xhaustion of administrative remedies serves two

---

[3]Title 42, United States Code, Section 1983, states, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom or usage, of any
State or Territory or the District of Columbia, subjects, or causes to be subjected, an citizen of
the United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding for redress . . . ."

main purposes." <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2385 (2006)(citing <u>McCarthy v. Madigan</u>,

503 U.S. 140, 145 (1992).

> First exhaustion protects administrative agency authority. Exhaustion gives an
> agency an opportunity to correct its own mistakes with respect to the programs it
> administers before it is hauled into federal court, and it discourages disregard of
> [the] agency's procedures.
>
> Second, exhaustion promotes efficiency. Claims that generally can be resolved
> much more quickly and economically in proceedings before an agency than in
> litigation in federal court. (internal citations and quotation marks omitted).

<u>Id</u>. Parties who feel they are aggrieved may prefer not to exhaust administrative remedies for a

variety of reasons, including bad faith. <u>Id</u>. However, "exhaustion requirements are designed to

deal with parties who do not want to exhaust . . .[and to provide] the agency [with] a fair and full

opportunity to adjudicate the claims." <u>Id</u>. "[E]xhaustion of administrative remedies . . . means

using all steps that the agency holds out, and doing so *properly* so the agency addresses the issues

on the merits." <u>Id</u>. (citing <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002), <u>cert</u>. <u>denied</u>,

537 U.S. 949 (2002)(emphasis in original). Proper exhaustion is demanding "compliance with

an agency's deadlines and other critical procedural rules because no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings."

<u>Woodford</u>, 126 S.Ct. at 2386.

_____ " . . . [E]xhaustion of administrative remedies is required for any suit challenging prison

conditions . . . ." <u>Id</u>. (citing <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002)); <u>see</u> <u>Porter</u>, 534 U.S. at

532 (The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege excessive

force or some other wrong.). "Prisoners must . . . exhaust all available remedies, . . . even where

the relief sought . . . cannot be granted by the administrative process." <u>Id</u>. (citing <u>Booth</u>, 532

U.S. at 734).  "To exhaust [administrative] remedies, a prisoner must file complaints and appeals

in the place, and at the time, the prison's administrative rules require."  <u>Pozo</u>, 286 F.3d at 1025.

Administrative Remedy Requests must contain all of the required information.[4]  Plumley Dec.  ¶

4.  A prisoner must not be permitted to deliberately bypass the administrative process by flouting

the agency's procedural rules.  <u>Woodford</u>, 126 S.Ct. 2389.

The Bureau of Prisons has an Administrative Remedy Program which "allow[s] an

inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  28

C.F.R. § 542.10.  Under this program, "an inmate must first present an issue of concern

informally to staff" in order to attempt resolution.  28 C.F.R. § 542.13(a).[5]  A record of an

inmate's "attempt to informally resolve [the issue is] signed by the inmate and a member of the

Unit Team, and maintained in a centralized file."  Plumley Dec. ¶ 2.  If the attempt to informally

resolve a complaint is unsuccessful, the inmate may file a formal written Administrative Remedy

Request with the Warden within "20 calendar days following the date on which the basis for the

Request occurred."  28 C.F.R. § 542.14; <u>see</u> Plumley Dec. ¶ 2.

 "An inmate who is not satisfied with the Warden's response [to his Administrative

Remedy Request] may submit an Appeal . . . to the appropriate Regional Director within 20

---

[4]Strict procedures must be followed in making this administrative request.  Specifically, the inmate must file the Request on the appropriate form.  28 C.F.R. § 542(c)(1).  A single complaint or a reasonable number of closely related issues should be included on the form.  28 C.F.R. § 542(c)(2).  If multiple unrelated issues are included on the form, they are rejected.  <u>Id</u>. The inmate must complete the form with all requested identifying information and shall state the complaint in the space provided on the form."  28 C.F.R. § 542.14(c)(3).  The inmate shall date and sign the Request and submit it to . . . [a designated] institution staff member."  28 C.F.R. § 542.14(c)(4).  <u>Id</u>.

[5]"Each warden . . . establish[es] procedures to allow for the informal resolution of inmate complaints."  <u>Id</u>.

calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a); see Plumley

Dec. ¶ 2. The inmate must attach a complete copy of the Institution Request and response to the

appeal. 28 C.F.R. § 542.15(b); see Bitton v. Gonzales, No. Civ. A. 05-2045, 2006 WL 335766,

at *2 (D.D.C. February 13, 2006). If the inmate is "not satisfied with the Regional Director's

response[, he] may submit an Appeal . . . to the [Office of] General Counsel [in Washington,

D.C.]" 28 C.F.R. § 542.14; see Plumley Dec. ¶ 2. This appeal must be submitted within 30

calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15. This

appeal must be accompanied by a complete copy of the institutional and regional filings and

responses. 28 C.F.R. § 542.15(b); see Bitton, 2006 WL 335766, at *2. Appeal to the Office of

General Counsel is the final administrative appeal in the Bureau of Prisons. 28 C.F.R. § 542.15;

see Plumley Dec. ¶ 2. "If the inmates submission is rejected at any level, he is given written

notice of the reasons for the rejection and an opportunity to resubmit his appeal within a

reasonable time." Bitton, 2006 WL 335766, at *2 (citing 28 C.F.R. 542.17(b)).

2) Plaintiff's Conduct

During February of 2005, "Chaplain Jon Woods held a meeting with the inmate

representatives of every faith group authorized to meet [at Beaumont]." Complaint, First

Submittal, p. 2. Plaintiff is "the liaison between the Ifa Community . . . and chaplaincy staff,"

Complaint ¶ 8, and was present. See Complaint, First Submittal, p. 2. In this meeting, Chaplain

Wood "stated that chapel sign-in sheets must be signed by all inmates attending religious

programs.[6] Id. Chaplain Wood also informed the inmates present that "inmate name" entries

_____

[6]Chaplain Jon Woods indicated that he "instructed [plaintiff] that he should only use his
BOP committed name when signing into religious services." Woods Dec. ¶ 3.

<u>must</u> be made with the name found on each individual's BOP identification <u>only</u>.  <u>Id</u>. (emphasis in original).  To maintain security and accountability of its prisoners, BOP policy requires that inmates "use their committed names as reflected on the Judgment and Commitment Order." Plumley Dec. ¶ 4.  Chaplain Woods informed the inmates that an incident report would be completed for any individual who failed to comply.  <u>Id</u>.

On March 3, 2005, plaintiff appeared for religious services.  On the top of the sign-in form, the following was printed:  "Please print your name as it is on your BOP identification and write clearly."  <u>See</u> Complaint, Attachment C.  Nevertheless, in contravention of Chaplain Woods' instructions, and the instructions on the form, plaintiff signed into religious services using his committed name, Ryan Poullard, as well as his temporary religious name, Shangowande Orisha-nla.  <u>See id</u>.; Woods Dec. ¶ 3.  Therefore, Chaplain Woods prepared a disciplinary report which indicated that plaintiff had "been instructed to sign in with the official Bureau of Prisons name found on his BOP identification only [and did not do so.]"  Woods Dec. ¶ 4; Complaint, Attachment E.  "The Unit Discipline Committee found [plaintiff] guilty of the offense and sanctioned him to ten hours of extra duty.  Woods Dec. ¶ 4; <u>see</u> Complaint, First Submittal, p. 5.

BOP records reflect that, on March 23, 2005, plaintiff filed an Administrative Remedy Request, at the institutional level, seeking expungement of the incident report.  Plumley Dec. ¶ 5.  The records also reflect that plaintiff signed the Administrative Remedy Request with his religious name only.  <u>Id</u>.; <u>see</u> Complaint, First Submittal, p. 2.  On March 16, 2005, plaintiff's Administrative Remedy Request was rejected because he "did not sign his request."  <u>See id</u>., p. 1.  Plaintiff was notified in writing of the deficiency.  <u>See</u> Complaint, Remedy ID # 373354-R1.

- 10 -

Despite being notified of the defect, plaintiff did not resubmit his Administrative Remedy

Request with the institution.  Plumley Dec. ¶ 5.

Instead, on April 10, 2005, plaintiff filed an Administrative Remedy Request with the

Regional Director.  See Complaint, Second Submittal, p. 2.  In this request, plaintiff complained

that his institutional level Administrative Remedy Request was denied for failure to sign it with

his committed name.[7]  On April 20, 2005, a notice of rejection was given to plaintiff.[8]  The

reasons cited for the rejection were as follows:

> 1) You did not sign your request or appeal.
> 2) You did not attempt informal resolution prior to submission of administrative remedy . . .
> 3) You must first file a BP-9 request through the institution for the warden's review and
> response before filing an appeal at th[e regional] level.[9]
> 4) You did not provide a copy of your institution administrative remedy request (BP-9)
> form & a copy of the (BP-09) response from the warden.

Complaint, Remedy ID # 373354-R1, p. 1.  The rejection also stated, "You must sign your

administrative remedy appeals, using your committed name, before we can accept them for

processing."  Id.

On April 25, 2005, plaintiff filed an Administrative Appeal with the Bureau of Prison's

Central Office.[10]  See Complaint, Remedy ID # 373354-A1, p. 2.  Plaintiff signed this appeal

---

[7]Because plaintiff appealed the rejection of his appeal for failure to sign his committed
name and not the expungement of the incident report, this Administrative Remedy Request was
deemed "unrelated."  See Plumley Dec. ¶ 7.

[8]SENTRY generates a notice of rejection addressed to the inmate detailing the reasons
why the Administrative Remedy Request was rejected.

[9]A BP-9 is the form to be used when making a written Administrative Remedy Request.
See 28 C.F.R. § 542.14(a).

[10]This appeal was received on June 1, 2005.  See Complaint, Remedy ID # 373354-A1, p.
1.

with his religious first name, Shangowande, and a symbol of an eye.  See id.  On June 6, 2005,

plaintiff's appeal was rejected for the following reasons:

> 1) You did not sign your request or appeal.
> 2) You did not attempt informal resolution prior to submission of Administrative Remedy, or you did not provide the necessary evidence of your attempt at informal resolution.
> 3) You must first file a B-9 request through the institution for the Warden's review and response before filing an appeal at this level.
> 4) You did not provide a copy of your institution administrative remedy request (BP-9) form or a copy of the (BP-9) response from the warden.

Complaint, Remedy ID # 373354-A1, p. 2.  Plaintiff also was instructed to "follow the

directions given to [him] by the Regional Office."[11]  Id.

    In his Complaint, plaintiff asserts that he has "exhausted all available remedies using the

BOP's administrative remedy program."  Complaint ¶ 4.  Plaintiff is incorrect.  While plaintiff

did file an Administrative Remedy Request at the institutional level, he did not comply with the

administrative procedures.  Plaintiff signed the request with his religious name not his

committed name.  He was informed of the deficiency, but failed to correct and resubmit his

request.  The Supreme Court has determined that proper exhaustion requires compliance with an

agency's "critical procedural rules [so that its] adjudicative system can function effectively. . . ."

Woodford, 126 S.Ct. at 2386.  Plaintiff's failure to follow the agency's procedural rules alone is

a sufficient basis for dismissal of his Complaint.

    If plaintiff had corrected the deficiency in his request, and resubmitted it, the next step in

the administrative process would have been for plaintiff to "file a formal written Administrative

Remedy Request with the Warden . . . ."  28 C.F.R. § 542.12; see Plumley Dec. ¶ 2.  Plaintiff

---

[11]Prior to filing an appeal with the Central Office, an inmate must properly file an appeal at the regional level.  28 C.F.R. § 542.14.

did not. Rather, continuing to ignore agency administrative requirements, plaintiff filed an appeal of the rejection of his Administrative Remedy Request for failure to sign his committed name, with the BOP Regional Office. Plaintiff did not submit this request at the institutional level or with the Warden. Plaintiff's appeal with the Regional Office was rejected for several reasons including the fact that he skipped required steps in the administrative process. See supra, pp. 10-11 (reasons for rejection by the Regional Office); Plumley Dec. ¶ 7. Plaintiff was informed that his appeal was not accepted for processing. Id.

Nevertheless, despite being notified of the failure to complete steps in the administrative process, plaintiff filed an appeal with the Central Office of the BOP. See Plumley Dec. ¶ 8. This appeal also was rejected for several reasons including the fact that plaintiff did not attempt informal resolution, file a request with the warden, or follow the instructions provided by the Regional Office. See supra, p. 11 (reasons for rejection by the Central Office); Plumley Dec. ¶ 8. Nevertheless, plaintiff filed this suit.

Both statutory and legal authority require the exhaustion of administrative remedies prior to filing suit. See 42 U.S.C. § 1997(e)(a); Woodford, 126 S.Ct. at 2394; Jackson v. District of Columbia, 254 F.3d at 269("a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted administrative remedies"); Bitton, 2006 WL 335766, at *3 (plaintiff did not complete the established inmate grievance procedure in seeking redress prior to bringing the action, so action must be dismissed); cf. Henderson v. Federal Bureau of Investigation, Civil Action No. 05-1891, 2006 WL 1371687, at *3 (May 15, 2006)("A plaintiff's belief that pursuing his administrative remedies would be futile does not excuse him from the PLRA's exhaustion requirement."). Plaintiff cannot ignore proper agency

procedures, or worse feign attempt at exhaustion, and then proceed with the administrative

process.  An inmate must use "all steps that the agency holds out, and do[] so *properly* . . . ."

Woodford, 126 S.Ct. at 2385, citing Pozo, 286 F.3d at 1024 (emphasis in original).  "A prisoner

who does not want to participate in the prison grievance system will have little incentive to

comply with the system's procedural rules unless noncompliance carries a sanction."  Id. at

2388.  Here, the appropriate sanction is dismissal of the plaintiff's Complaint.[12]

### III.  THE RELIGIOUS EXERCISE IN LAND USE AND BY INSTITUTIONALIZED PERSON ACT DOES NOT APPLY TO FEDERAL PRISONS.

Plaintiff's Complaint alleges that the defendants failed to accommodate him in a manner

consistent with the Religious Land Use and By Institutionalized Persons Act ("RLUIPA").

Complaint ¶17; see 42 U.S.C. § 2000cc et seq.  RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [Title 42, S]ection 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(1)(a).  Under the RLUIPA, the term "government"

> (A)  means-
> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i) . . . .

---

[12]In plaintiff's Complaint, he attached a document entitled "Documentation of Informal Resolution."  This document was not signed by staff. Therefore, it was not submitted through appropriate administrative channels.  See Administrative Remedy Generalized Retrieval Form (attached hereto as Exhibit E); Complaint, First Submittal, p. 4.

42 U.S.C. 2000cc-5(4).[13]   Therefore, the RLUIPA applies exclusively to institutions created

under the authority of, and providing services on behalf of, a state, and it has no application in

federal prisons.  See Jackson v. Federal Bureau of Prisons, 2006 WL 2434938, *3 (D.D.C.

2006)(RLUIPA "does not create a cause of action against the federal government or its

correctional facilities . . . This conclusion is the only sensible construction of the statute."); Ish

Yerushalayim v. United States, 374 F.3d 89 (2d Cir. 2004) (RLUIPA "clearly does not create a

cause of action against the federal government or its correctional facilities.").  See also Benning

v. Georgia, 391 F.3d 1299 (11th Cir. 2004).  Because Plaintiff is incarcerated in federal prison

and his contentions relate to matters that occurred while in federal prison, RLUIPA does not

provide the proper basis to challenge actions by the federal officials.  Thus, the Plaintiff's claims

under RLUIPA must be dismissed.

### IV.  PLAINTIFF HAS FAILED TO MEET HIS BURDEN UNDER THE RELIGIOUS FREEDOM RESTORATION ACT.

#### A.  Applicable Bureau of Prisons Regulations

##### 1)  Policy Regarding Names

According to the Department of Justice, Federal Bureau of Prisons Program Statement

Number 5800.13, Inmate Systems Management Manual, the BOP's policy on inmate names is

as follows:

> h.  Inmate Committed and Legal Names.  The name entered on the
> Judgment/Commitment Order is considered the committed name to be used by the
> inmate, as well as the Bureau [of Prisons].   SENTRY must reflect the committed name,

---

[13]Title 42, United States Code, Section 1997(1)(A) defines an institution as a facility or
institution that, among other things, "is owned, operated or managed by, or provides services on
behalf of any State or political subdivision of a State."

which may only be changed by an order from the federal sentencing court.[14]

.          .          .

Additionally, inmates may adopt name changes in accordance with religious affiliations or other lawful means.  It is the inmate's responsibility to provide the I[nmate] S[ystems] M[anagement] with verifiable documentation of the name change which will be entered by staff in the SENTRY "legal" name field.

See Program Statement 5800.13, Inmate Systems Management Manual, Chapter 6, Page 6

(6/28/02).

### 2)  Policy Regarding Religious Beliefs

Pursuant to 28 C.F. R. § 548.10:

(a) The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons.

(b) When considered necessary for the security or good order of the institution, the Warden may limit attendance at or discontinue a religious activity.  Opportunities for religious activities are open to the entire inmate population, without regard to race, color, nationality, or ordinarily, creed. . . .

28 C.F.R. § 548.10.

Upon arriving at a Federal Correctional Center, an inmate must go through an initial

screening process. 28 C.F.R. § 548.10(c).  During this process, an inmate may make known his

religious preference.  Id.; see Program Statement 5360.09, Religious Beliefs and Practices, ¶ 8

(attached hereto as Exhibit F).   Inmates can also request a change of their religious preference

by submitting a written request to the Chaplain at any time. 28 C.F.R. § 548.10(c).  When an

inmate wishes to attend religious services, staff may refer to the information reported on the

---

[14]SENTRY is the BOP's computerized database of prison records.  See Plumley Dec. ¶ 3.

intake screening form.[15]  Program Statement 5360.09, Religious Beliefs and Practices, ¶ 8.  If

the form indicates "No Preference" or designates a different faith group from that whose

services the inmate wishes to attend, the inmate may be restricted from participation in that

religious service.  See id.

### B.  The Religious Freedom Restoration Act.

The Religious Freedom Restoration Act ("RFRA") provides that:

(a) In general
Government shall not substantially burden a person's exercise of religion even if the
burden results from a rule of general applicability, except as provided in subsection (b)
of this section.

(b) Exception
Government may substantially burden a person's exercise of religion only if it
demonstrates that application of the burden to the person--
      (1) is in furtherance of a compelling governmental interest; and
      (2) is the least restrictive means of furthering that compelling governmental interest.

(c) Judicial relief
A person whose religious exercise has been burdened in violation of this section may
assert that violation as a claim or defense in a judicial proceeding and obtain appropriate
relief against a government.  Standing to assert a claim or defense under this section
shall be governed by the general rules of standing under Article III of the Constitution.

Religious Freedom and Restoration Act of 1993, 42 U.S.C.A. § 2000bb.[16]

---

[15]This information is entered into SENTRY.

[16]The legislative history of RFRA shows that Congress intended, through the enactment
of this statute, for courts to accord prison administrators due deference.  In so doing, the
Committee considering the legislation explained:

> The Committee does not intend to act to impose a standard that would exacerbate
> the difficult and complex challenges of operating the Nation's prisons and jails in
> a safe and secure manner.  Accordingly, the committee expects that the courts will
> continue the tradition of giving due deference to the experience and expertise to
> prison and jail administrators in establishing necessary regulations and procedures
> to maintain good order, security and discipline, consistent with consideration of
> costs and limited resources.

To make out a *prima facie* case under RFRA, a plaintiff must establish by a preponderance of the evidence: "(1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion." Sample v. Lappin, 424 F.Supp. 2d 187, 192 (D.D.C. 2006), quoting Kikumura v. Hurley, 242 F.3d 950, 960 (10th Cir. 2001). In other words, plaintiff must show that he has a sincerely held religious belief, and not just a philosophy or preference, that has been substantially burdened by government action. See Henderson v. Kennedy, 253 F.3d 12 (D.C. Cir. 2001); Jackson v. District of Columbia, 89 F.Supp.2d 48 (D.D.C. 2000). If plaintiff establishes his prima facie case, the burden shifts to the government to demonstrate that the challenged action "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Sample, 424 F.Supp at 192; 42 U.S.C. § 2000bb-1; U.S. v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996).

1)  Plaintiff has failed to show he has a sincerely held belief.

Plaintiff claims that, according to the Messianic Nation of Islam religious beliefs, "he must proclaim a holy or religious name . . . ." Complaint ¶ 9. As such, "he must use his religious name [o]n all papers, forms and documents prepared by himself to properly observe the requirements of his faith." Id. ¶ 10. Because of that, plaintiff signed the chapel sign-in sheet with his temporary religious surname substitute as well as his committed name. Id. ¶ 14. However, BOP records do not demonstrate that plaintiff has a sincerely held belief in the Messianic Nation of Islam. A review of plaintiff's Inmate Religious History reveals that plaintiff's religion was unknown upon entering the system on February 20, 1998. See Inmate

---

S. Rep. 103-111, 1993 U.S.C.C.A.N. 1892, 1899-1900 (July 27, 2993) (footnote omitted).

Religious History Form (attached hereto as Exhibit G).   Less than two months later, on April

11, 1998, the records reveal that plaintiff indicated a preference of Catholicism.  Id.  On

November 14, 2001, plaintiff changed his preference to Muslim.  Id.  A little over a month after

that, on December 26, 2001, plaintiff changed his preference to Protestantism.  Id.  On August

13, 2002,   plaintiff was affiliated with the Moorish Science Temple.  Id.  On January 13, 2004,

plaintiff changed his religion to "Other."  Id.  On August 25, 2005, plaintiff affiliated himself

with the Nation of Islam.  Id.  Less than two months after that, on October 19, 2004, plaintiff

changed his religion back to "Other."  Id.

Plaintiff's religious history records should be taken into account in assessing whether he

has a sincerely held religious belief.  Cf. Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir.

1996)("Courts must be cautious to separate real from fictitious religious beliefs." ).  As

evidenced by plaintiff's religious history records, plaintiff's religious affiliations have changed

often.  In fact, most recently, plaintiff changed his religious affiliation from that of the Nation of

Islam to "Other."   In light of that, it does not appear that plaintiff has a sincerely held religious

belief in the Nation of Islam or in the necessity of using his religious name on all documents.

2)  The Government has not substantially burdened plaintiff's belief.

Assuming that plaintiff has a sincerely held belief in the Messianic Nation of Islam and

the use of his religious name on documents, plaintiff bears the burden of showing that the BOP

requirement that one sign only his committed name on prison documents, substantially burdens

his sincere religious belief.  Mere conclusory allegations are not enough to carry this burden.  In

determining whether BOP regulations substantially burden a sincerely held belief, courts must

be mindful that "[l]awful incarceration brings about the necessary withdrawal or limitation of

many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948).

To show a substantial burden, "[t]he interference must be more than an inconvenience; the burden must be *substantial* and an interference with a tenet or belief to religious doctrine." Graham v. Comm'r of Internal Revenue Service, 822 F.2d 844, 850-51 (9th Cir. 1987), aff'd sub nom, Hernandez v. Comm'r of Internal Revenue Service, 490 U.S. 680 (1989). See Levitan, 281 F.3d 1313, 1321 (D.C. Cir. 2002)("It is sometimes the case that litigants can make no credible showing that the affected practice is either central or important in their religious scheme."). "A substantial burden constitutes 'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Cockrell-El v. District of Columbia, 937 F.Supp. 18 (D.D.C. 1996)(quoting Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141 (1987)). "A substantial burden does not arise merely because 'the government refuses to conduct its own affairs in ways that comport with the religious beliefs of particular citizens.'" Alliance for Bio-Integrity v. Shalala, 116 F.Supp.2d 166 (D.D.C. 2000)(quoting Bowen v. Roy, 476 U.S. 693, 699 (1986)).

Here, by requiring plaintiff to sign prison documents with his committed name, the Bureau of Prisons is not exerting substantial pressure on plaintiff to violate his religious beliefs. The use of only the committed name does not rise to the level of a fundamental or substantial interference with plaintiff's expression of his religious rights. Clearly, the Bureau of Prisons is not preventing the Plaintiff from worshiping or engaging in religious study. It is not preventing plaintiff from using his temporary religious surname substitute in any other manner. Rather, the BOP is merely requiring that plaintiff abide by its record keeping regulations by signing into

religious services with his committed name. Plaintiff has suffered only a minor inconvenience as prison officials attempt to maintain order within the prison. Alliance for Bio-Integrity v. Shalala, 116 F.Supp.2d at 166 ("A substantial burden does not arise merely because 'the government refuses to conduct its own affairs in ways that comport with the religious beliefs of particular citizens.'")(citing Bowen v. Roy, 476 U.S. 693, 699 (1986)).

In fact, plaintiff is able to use a religious name on prison documents. To do so, however, the BOP requires that plaintiff legally change his committed name, as reflected on the Judgment and Commitment Order, to the religious name in order to use it. To update its record keeping and maintain accountability of prisoners, the BOP only requires that, upon the legal change, the inmate provide verifiable documentation of the change to prison staff. That name is then entered into the SENTRY database for use in prison documentation. Program Statement 5800.13, Chapter 6, Page 6 (attached hereto as Exhibit H).

Here, plaintiff has not legally changed his committed name. Moreover, in his Complaint, plaintiff claims to be burdened by being unable to use his temporary religious surname. However, this temporary religious surname will change as soon as plaintiff receives his final religious name. Upon receiving his final religious name, plaintiff intends to use that name on all prison documentation. See Complaint ¶ 13. Permitting an inmate to sign prison documents with a temporary name, religious or not, of which prison officials have no official record, and then change to yet another name of which prison officials have no official record, would not only contravene BOP regulations but, would create confusion and impair prison officials' attempts to maintain accountability and order within the prison.

Plaintiff asserts that the BOP has prevented him from receiving his final religious name

because BOP has not allowed the religious ceremony that will give him a final religious name to take place.  Id.  In order for the ceremony to take place, plaintiff is required to provide chaplaincy with the names of the priests who will conduct the name-change ceremony. Declaration of James Watanabe ("Watanabe Dec.") ¶ 4 (attached hereto as Exhibit I).  Plaintiff produced the name of the priest and has been allowed to start the preparation process required to change his name  Id. ¶ 5.  Religious Services at the institution has instructed the priest to "start the preparation process for the religious name changing ceremony for [plaintiff]"  Id.  Clearly, the government is not precluding plaintiff from receiving his final religious name which, upon taking appropriate steps, he can use on prison documentation.

3) <u>The Government has a compelling interest in requiring that inmates use legal/committed names while incarcerated.</u>

Assuming *arguendo* that plaintiff were able to establish that he has a sincerely held religious belief and has been substantially burdened, the defendant bears the burden of showing that the policy furthers a compelling government interest.  To be compelling, the "interest must be of the 'highest order.'" <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215 (1972).  "Whether something qualifies as a compelling interest is a question of law."  <u>United States v. Hardman</u>, 297 F.3d 1116, 1127 (10th Cir. 2002) (citation omitted).  Maintaining security in correctional institutions has been regarded as an interest of the "highest order."  H.R. Rep. 103-88.  Under the RFRA, a court will not examine the general application of a prison regulation, but will instead look at whether there is a compelling governmental interest, advanced through the least restrictive means, to apply the prison regulation to the individual plaintiff.  <u>Kikumura v. Hurley</u>, 242 F.3d 950 (10th Cir. 2001).

The BOP attempts to maintain order within its prisons by requiring prisoners use only

their committed name on prison documentation.  This use of one name ensures that prison officials maintain order and accountability of its prisoners.  This accountability helps prevent escapes, illicit communications, impersonations, and confusion that may have adverse consequences within the prison setting.  Therefore, requiring plaintiff to use only plaintiff's committed name on sign-in sheets is justified by the compelling governmental interest in maintaining orderly, efficient and secure prisons.  By establishing procedures for the use of religious names in prison, prison administrators are attempting to prevent any undermining of institutional security.  Moreover, plaintiff's attempts to use two names, a committed and a temporary religious name, and then shortly thereafter use the committed name and yet another religious name could certainly compromise institutional security.

Plaintiff cites the Ninth Circuit case of <u>Malik v. Brown</u>, 65 F.3d 148 (9th Cir. 19945), to demonstrate that use of the committed and religious names would satisfactorily allow inmates to freely exercise their religions.  In <u>Malik v. Brown</u>, in 1978, an inmate, David Washington Riggins, converted to the Sunni Muslim faith, and legally changed his name to Dawud Halisi Malik.  16 F.3d 330, 331 (9th Cir. 1994), supplemented by 65 F.3d at 148.  Despite the legal name change, the inmate continued to use the name Riggins for the next ten years.  <u>Id</u>.  In 1990, the inmate attempted to mail several letters which were returned to him later that day because they included only his religious name in the upper lefthand corner.  <u>Id</u>. at 332.  Malik alleged that the letters contained both his committed name and his legally-changed religious name.  <u>Id</u>. Officials at the prison asserted that Malik added his committed name after the letters were returned to him.  <u>Id</u>.  Malik received a general infraction for refusing to comply with prison directives concerning the U.S. Mail.  <u>Id</u>.

The Ninth Circuit held that prison regulations requiring an inmate to only use his committed name on mail and other documents violated RFRA. The court determined that, although the prison had a compelling interest in the continued use of inmates' committed names, the prison did not have an interest in preventing inmates from using both their names.[17]

The Malik case is distinguishable from the instant case because in Malik, the inmate had legally changed his name to the religious name. As a result, prison authorities had a record of his religious/legal name, and the use of this name along with his committed name would not compromise prison security. In the matter at hand, however, plaintiff has not legally changed his name to the temporary religious surname substitute. Moreover, he has not yet received a permanent religious name.[18] The security concerns at stake are even more pressing in this case because plaintiff is attempting to use a temporary religious name which will change when the ceremony occurs in which he will receive his permanent religious name. Moreover, neither the temporary religious name nor the forthcoming final religious name will be plaintiff's legal name. Clearly, if a prison were required to allow each inmate to sign documents with every temporary name he has chosen until the time comes that he receives a permanent name, and then begins to use that name, would cause great difficulties for a prison in its attempt to maintain prison security. The procedures in place which allow the use of the one committed name or legal name, whether religious or not, seeks to preserve those interests. Moreover, nothing precludes plaintiff from availing himself of the procedures to effect a legal name change, and

---

[17]The case was remanded for further fact-finding as to whether Malik put both names on the letters, or just his religious name. Malik, 16 F.3d at 334.

[18]Plaintiff's case would be more compelling if Orisha-nla were his final religious name. Because it is not, plaintiff's case is distinguishable from that of Malik.

then affixing that name to prison documents. Clearly, the government has a compelling interest in maintaining institutional safety, security and accountability, and these compelling interests would justify a substantial burden on Plaintiff's religion.

    4)  <u>The Government has implemented the least restrictive means.</u>

BOP regulations require that each inmate is identified in prison documentation by one name. This helps preserve efficiency, order and safety within the prison. Requiring inmates to use their committed name until they have legally changed their names is the least restrictive means of furthering the above-mentioned interests. "Least restrictive means" does not mean that prison officials must analyze every conceivable option in order to satisfy this prong of RFRA. <u>See</u> <u>Hamilton v. Schriro</u>, 74 F.3d 1545, 1556 (8th Cir. 1996), <u>cert.</u> <u>denied</u>, 519 U.S. 874 (1996). The government can meet its burden to prove the least restrictive means by showing that less restrictive alternatives were not acceptable to the plaintiff. <u>See</u> <u>id</u>.

Here, plaintiff is permitted to use his religious name on sign-in sheets if he has legally changed his committed name to the religious. Plaintiff claims that he has not changed his name legally because the religious name he is currently using is temporary in nature, and that he is awaiting a "final" name. <u>See</u> Complaint ¶ 13. However, upon receipt of his final religious name, plaintiff is free to legally change his committed name to that name and then use it. Surely, plaintiff cannot reject the available procedures and then claim that he has been burdened by the government.

In sum, the government has afforded the Plaintiff the opportunity to express his religious beliefs and legally change his name if he so desires. Upon legally changing his name and submitting the appropriate documentation to prison staff, plaintiff's BOP records will be

amended to reflect his legally-changed religious name.  Until then, requiring plaintiff to use only

his committed name, and not list what, by his own admission, is a only temporary religious

name, is the least restrictive means the BOP can employ in order to accomplish its compelling

interest of running safe, secure, and efficient prisons.

### V.  PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF.

Plaintiff seeks declaratory relief, see Complaint ¶¶ 1, 21, but is not entitled to such.  Title

28, United States Code, Section 2201 provides that:

> ... any court of the United States, upon the filing of an appropriate pleading, may declare
> the rights and other legal relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought.  Any such declaration shall have the
> force and effect of a final judgment or decree and shall be reviewable as such.

In determining the appropriateness of a declaratory judgment, the Court will look at (1)

whether declaratory judgment will definitely settle the controversy; (2) the availability of other

remedies or other proceedings that may be pending; (3) the convenience of the parties; (4) the

equity of the conduct of the declaratory judgment; (5) the prevention of 'procedural fencing'; (6)

the state of the court record; (7) the degree of the conflict between the parties and (8) the public

importance of the question to be decided.  Rooney v. Sec'y of Army, 293 F.Supp.2d 111

(D.D.C. 2003).  Moreover, declaratory relief is applicable when there is an "actual controversy."

This has been defined as "a controversy of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment."  Chaplaincy of Full Gospel Churches, et al. v. Johnson, 276

F.Supp.2d 79, 81 (D.D.C. 2003).  Even when there is an "actual controversy," however, the

District Court retains the discretion to withhold declaratory relief.  Id.

The RLUIPA is inapplicable to plaintiff's case.  In addition, the actions that plaintiff

complains of were done in accordance with BOP policy and were not violative of the RFRA.

Finally, plaintiff failed to properly avail himself of available administrative remedies before filing suit in District Court.  Therefore, his Complaint is ripe for dismissal.  While plaintiff insists that the Bureau of Prisons policies must be amended to the extent that they deny the relief he is seeking, there is no controversy which warrants the issue of a declaratory judgment, much less one of sufficient immediacy.  Plaintiff has failed to meet his burden, and is not entitled to such relief.

## CONCLUSION

Accordingly, for the reasons set forth above, defendants respectfully request that the Court dismiss this action, or in the alternative, grant defendants' motion for summary judgment. Should the Court deny defendants' motion to dismiss or for summary judgment, defendants request that the Court transfer this action to the Eastern District of Texas.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR # 435409
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant


Of Counsel:

Alma G. Lopez
Assistant General Counsel
Federal Bureau of Prisons
Office of General Counsel
Litigation Branch
320 First Street, N.W., Room 977E
Washington, D.C.  20534

## CERTIFICATE OF SERVICE

I certify that, on this <u>20th</u> day of October 2006, the foregoing, and the attached Order,

were mailed postage prepaid to:

Ryan Poullard
#06429-078
Federal Correctional Institution
POB 26020
Beaumont, Texas 77720

_____
MARIAN L. BORUM
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN POULLARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 05-1768 (HHK)** |
| | ) |
| **HARLEY LAPPIN, <u>et</u> <u>al.</u>,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### <u>ORDER</u>

This matter is before the Court on defendants' Motion to Dismiss or Transfer, or in the Alternative, for Summary Judgment.  Upon consideration of this Motion and the entire record of this case, it is this _____ day of _____, 2006,

**ORDERED** that Defendants' dispositive Motion should be and hereby is GRANTED; and it is further

**ORDERED** that this case should be and hereby is DISMISSED with prejudice from the Court's docket.

_____
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RYAN POULLARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 05-1768 (HHK)** |
| | ) |
| **HARLEY LAPPIN, <u>et al.</u>,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

<u>**ORDER**</u>

This matter is before the Court on defendants' Motion to Dismiss.  Upon consideration of this Motion and the entire record of this case, it is this _____ day of _____, 2006,

**ORDERED** that Defendants' Motion to Transfer should be and hereby is GRANTED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Marian L. Borum
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, DC  20530

Ryan Poullard
#06429-078
Federal Correctional Institution
POB 26020
Beaumont, Texas 77720