# Exhibit F

# Program Statement 5360.09

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD/RSB |
| **NUMBER:** | P5360.09 |
| **DATE:** | 12/31/2004 |
| **SUBJECT:** | Religious Beliefs and Practices |

1. [**PURPOSE AND SCOPE** §548.10.(a)  **The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons.**]

2. **SUMMARY OF CHANGES**

- The use and type of religious headwear and religious garments are delineated;
- Due dates for the annual report have been changed;
- Some of the implementing text has been moved under appropriate rules language sections;
- The religious diet accommodation for the certified food component has been modified;
- The credentials required for religious contracts and volunteers have been clarified.  The required forms have been developed;
- Any religious group whose doctrine, rituals or practices espouse domestic and/or foreign terrorism, or advocates any type of violence will not be authorized to meet;
- Staff supervision requirements for inmate religious programs is delineated;
- Language requirements used in religious programming is defined;
- The unauthorized religious practices are expanded to include language or behaviors that could be reasonably construed as a threat to safety, security, or orderly running of the institution; and,
- The Ceremonial Meal Equity Formula Threshold is modified.

3. **PROGRAM OBJECTIVES.**  The expected results of this program are:

a.  Religious accommodations will be made for all religions authorized to meet in Bureau of Prisons facilities.

b.  The religious rights of inmates of all faiths will be protected within the parameters of the security and orderly running of the institution.

c.  Religious resources will be equitably distributed for the benefit of all inmates.

d.  Pastoral care will be available to inmates and staff.

e.  Expertise on matters of religion in the correctional environment will be available for staff.

**[Rules - Bracketed Bold]**
Implementing Text - Regular Type

4.  **DIRECTIVES AFFECTED**

   a.  **Directive Rescinded**

      P5360.08  Religious Beliefs and Practices (5/25/01)

   b.  **Directives Referenced**

      P1350.02  Donations, Acceptance of (6/29/98)
      P3420.09  Standards of Employee Conduct (2/5/99)
      P3939.07  Chaplains, Employment, Responsibilities and
                Endorsements (10/26/01)
      P4510.05  Inmate Contributions (1/26/99)
      P4761.04  Special Foods or Meals From Outside Sources
                Introduced into Institutions (4/22/96)
      P5264.07  Telephone Regulations for Inmates (1/31/02)
      P5266.10  Incoming Publications (1/10/03)
      P5267.07  Visiting Regulations (4/14/03)
      P5280.08  Furloughs (2/4/98)
      P5300.20  Volunteers and Citizens Participation Programs
                Manual (6/1/99)
      P5326.04  Marriages of Inmates (12/17/98)
      P5500.11  Correctional Services Manual (10/10/03)
      P5500.12  Correctional Services Procedures Manual (10/10/03)
      P5538.04  Escorted Trips (12/23/96)
      P5553.06  Escapes/Death Notification (8/23/99)
      P5580.06  Personal Property, Inmate (7/19/99)
      P5800.12  Receiving and Discharge Manual (12/31/97)

      T5303.01  Ministry of the Bureau Chaplains (6/1/95)
      T5360.01  Practical Guidelines for Administration of Inmate
                Religious Beliefs and Practices  (3/27/02)

c.  Rules cited in this Program Statement are contained in 28 CFR §548.10-20 and 28 CFR §540.48.

5.  **STANDARDS REFERENCED**

a.  American Correctional Association Standards for Adult Correctional Institutions 3rd Edition:  3-4261, 3-4265, 3-4274, 3-4300, 3-4301, 3-4374, 3-4375, 3-4387, 3-4454, 3-4455, 3-4456, 3-4457, 3-4458, 3-4459, 3-4460, 3-4461, 3-4462, and 3-4463

b.  American Correctional Association Standards for Adult Local Detention Facilities 3rd Edition:  3-ALDF-3D-24, 3-ALDF-3E-04, 3-ALDF-4C-07, 3-ALDF-4C-08, 3-ALDF-4E-44, 3-ALDF-4E-45, 3-ALDF-4F-04, 3-ALDF-5F-01, 3-ALDF-5F-02, 3-ALDF-5F-03, 3-ALDF-5F-04, 3-ALDF-5F-05, 3-ALDF-5F-O6, 3-ALDF-5F-07, 3-ALDF-5F-09, and 3-ALDF-5F-10

c.  American Correctional Association 2nd Edition Standards for the Administration of Correctional Agencies:  2-CO-5E-01

6.  **PRETRIAL, HOLDOVER, AND DETAINEE PROCEDURES.**  Procedures in this Program Statement apply to Pretrial, Holdover, and Detainee Centers.  The exception to these procedures exists where building design prevents the maintenance of an outside worship area, including the sweat lodge (see Section 12.c. of this Program Statement).

7.  <u>**RELIGIOUS OPPORTUNITIES AND LIMITATIONS**</u>  **§548.10 (b) [When considered necessary for the security or good order of the institution, the warden may limit attendance at or discontinue a religious activity.  Opportunities for religious activities are open to the entire inmate population, without regard to race, color, nationality, or ordinarily, creed.  The warden, after consulting with the institution chaplain, may limit participation in a particular religious activity or practice to the members of that religious group.  Ordinarily, when the nature of the activity or practice (e.g., religious fasts, wearing of headwear, work proscription, ceremonial meals) indicates a need for such a limitation, only those inmates whose files reflect the pertinent religious preference will be included.]**

a.  **Religious Accommodation.**  The level of scheduled activities is expected to be commensurate with the institution's mission/need.  Authorized congregate services will be made available for all inmates weekly with the exception of those detained in any Special Housing Units (SHUs).  If a state of emergency exists (e.g. fog, institution lock down, food strike), the warden or designee will determine the appropriate level of

P5360.09
12/31/2004
Page 4

chapel programming. Inmates may recite formulaic prayers in the
language required by their religion. Sermons, original oratory,
teachings and admonitions must be delivered in English. The
warden may authorize the delivery of programs in other languages
only when it is appropriate to accommodate the overall needs of
the population. Best correctional practices for each religion
are included in the Practical Guidelines for Administration of
Inmate Religious Beliefs and Practices Technical Reference
Manual.

The Warden may periodically review religious practices to
determine whether a religious practice remains within the scope
of best correctional practice and religious accommodation. If
upon review, the Warden determines that a religious practice
jeopardizes institution safety, security and good order, the
practice may be temporarily restricted. The religious practice
may resume only upon completion of a thorough evaluation of the
practice with respect to compelling government interests and
least restrictive alternatives.

To ensure the safety, security and good order of the institution,
any religious group that encourages domestic and/or foreign
terrorism, or advocates any type of violence will not be
authorized to meet.

   b. **Religious Use of Wine.** Inmates may be permitted to receive
small amounts of wine as part of a religious ritual only when
administered under the supervision of BOP chaplains, clergy
contractors, or clergy volunteers authorized by the Bureau to
perform the ritual.

   Because wine is otherwise a contraband substance, it can be
dispensed only under strict control and supervision. Inmates
will not be allowed to give wine to other inmates. For this PS'
purposes, the consumption of wine under these circumstances will
not be considered consumption of alcohol or ingestion of an
illegal substance.

   The institution will purchase the wine using normal procurement
procedures. Wine will be secured in an appropriate area of the
chapel. For scheduled services for which wine is authorized,
chaplaincy staff will provide the wine to the contract or
volunteer community minister in a disposable 2 ounce covered
container. The container will be used to measure and transport
the wine. The minister will dispose of the empty 2 ounce
container or any unused portion of the wine to protect against
contamination or abuse. The chaplain will inform staff of

P5360.09
12/31/2004
Page 5

procedures for procuring, storing, and using wine.  This is
accomplished through ongoing training to avoid unnecessary and
potentially disruptive confiscation of essential sacred elements.

   c.  **Unauthorized Practices.**  The following religious practices
and activities are never authorized:

- animal sacrifice;
- language or behaviors that could reasonably be
construed as a threat to safety, security, or the
orderly running of the institution,(e.g., curses);
- nudity;
- self-mutilation;
- use, display, or possession of weapons or what appears
to be a weapon (e.g., paper sword);
- paramilitary exercises;
- self-defense training;
- sexual acts;
- profanity;
- consumption of alcohol (except as noted in 7b,
Religious Use of Wine);
- ingestion of illegal substances;
- proselytizing;
- encryption; and
- disparagement of other religions.

   d.  **Supervision of Inmates.**  Ordinarily the level of
supervision of inmate religious groups in secure facilities will
follow these guidelines for religious programs involving worship,
study or meetings.

- Inmate-led religious programs require constant staff
supervision.
- Religious programs with Level I volunteers require
constant staff supervision.
- Religious programs led by Level II volunteers and
contractors require intermittent visual and audio
supervision by staff.  This applies to both escorted
and unescorted volunteers and contractors.
- Special Religious Programs (e.g. choirs, concerts,
seminars) require constant staff supervision.

When necessary, Wardens may identify alternative practices and
implement the least restrictive alternative consistent with the
security and orderly running of Bureau institutions.

8.  **RELIGIOUS PREFERENCES §548.10 (c) [The Bureau of Prisons
does not require an inmate to profess a religious belief.  An**

**inmate may designate any or no religious preference at his/her
initial team screening.  By notifying the chaplain in writing, an
inmate may request to change this designation at any time, and
the change will be effected in a timely fashion.]**

Unit staff will enter the initial religious preference (RLG)
assignment into SENTRY at the inmate's initial classification.
When the chaplain approves an inmate's request for changing a
religious preference, the chaplain is responsible for making the
necessary change in the SENTRY RLG assignment.

To maintain the security and orderly running of the institution,
and to prevent abuse or disrespect by inmates, the chaplain will
monitor patterns of changes in the inmate's declarations of
religious preference.

In determining whether to allow an inmate to participate in a
specific religious activity, as described in Section 7,
[§548.10(b)] above, staff may wish to refer to the information
reported on the intake screening form and the inmate's religious
preference history.  Inmates showing "No Preference" or
indicating membership in a different faith group may be
restricted from participating in activities deemed appropriate
for members only.

9.  **[DEFINITION §548.11.  For purposes of this subpart, the term
"religious activity" includes religious diets, services,
ceremonies, and meetings.]**

10.  **[CHAPLAINS §548.12.  Institution chaplains are responsible
for managing religious activities within the institution.
Institution chaplains are available upon request to provide
pastoral care and counseling to inmates through group programs
and individual services.  Pastoral care and counseling from
representatives in the community are available in accordance with
the provisions of §§ 548.14 and 548.19.  The chaplain may ask the
requesting inmate to provide information regarding specific
requested religious activities for the purpose of making an
informed decision regarding the request.]**

28 CFR §548.14 and §548.19 refer to Sections 12 and 17,
respectively, of this PS.

   a.  **Chaplains as Pastoral Care Providers.**  The chaplaincy
department is directed by full-time Bureau chaplains.  All
chaplains are qualified pastoral care providers who have
verifiable religious credentials and current religious
endorsements.

P5360.09
12/31/2004
Page 7

Chaplains plan, direct, and supervise all aspects of the religious program and have physical access to all areas of the institution to minister to inmates and staff.  All institution chaplains are employed to:

- lead worship services in their own tradition (e.g., General Christian, Jewish, Buddhist, Catholic);
- provide professional spiritual leadership and pastoral care;
- accommodate the legitimate religious needs of inmates; and
- supervise institution religious activities.

Chaplaincy Services support staff may assist the chaplains in supervising the institution's religious activities and administrative duties, but may not perform duties reserved for professional chaplains.

(1) **SHU Religious Access.**  Ordinarily, all inmates, except those in the SHU, have access to regularly scheduled congregate services.  Inmates of all faiths will have regular access to chaplains.  Upon written request, inmates may also have access to recognized representatives of their faith groups while in SHUs. Each chaplain will provide pastoral care in SHUs and hospital units weekly.

Chaplains will provide opportunities for individuals to receive the sacraments and sacred rituals in SHUs.  This includes, but is not limited to, communion and Sabbath prayer items--matzo and grape juice.  Ordinarily, sacred pipe use will be accommodated in Administrative Detention.  The Warden may determine the circumstances under which the sacred pipe may be used in Disciplinary Segregation.

(2) **Telephone Calls.**  Individual pastoral care includes counseling inmates and/or their families in personal crisis and family emergency situations.  When authorized by the warden, chaplains may facilitate inmate telephone calls in emergency situations.  No other chapel staff are authorized to facilitate these calls.

Each Chapel will be equipped with an additional telephone which is capable of recording inmate telephone conversations during the pastoral calls.  A notice in English and Spanish will be placed at the telephone location to advise the user that all conversations are subject to recording and that using the telephone constitutes consent.  This telephone will be separate from the telephones provided for staff use.

P5360.09
12/31/2004
Page 8

Chaplains will also maintain a telephone log which includes:

- the date, telephone number, and person called;
- name and register number of the inmate; and
- a brief reason for the call.

(3) **Women and Special Needs Inmates**

(a)  Pregnant inmates will be offered religious counseling to aid in making an informed decision whether to carry the pregnancy to full term.

(b)  The particular needs of women and special needs inmates may require the contracting of spiritual counselors or advisers for religious needs other than those of a specific faith tradition.

(4) **Deaths and Serious Illnesses.**  Each institution will establish clear procedures to involve a chaplain in notifying inmates and/or their families of serious illness or death of either inmates or their family members.  The chaplain will coordinate appropriate religious rituals at the time of an inmate's serious illness or death.

Also, the chaplain may advise the Warden regarding religious factors which may influence decisions concerning the performance of autopsies on deceased inmates and the proper disposition of the remains.

b.  **Introduction of New and Unfamiliar Religious Components.** Inmates may request the introduction of new or unfamiliar religious components into the Chaplaincy Services program.  When information is required regarding a specific new practice, the chaplain may ask the inmate to provide additional information which would be considered when deciding to include or exclude the practice from the Chaplaincy Services program.

(1) **Religious Issues Committee (RIC).**  When a decision cannot be reached locally, a RIC at the Central Office, appointed by the Assistant Director, Correctional Programs Division (CPD), will review inmate requests for introducing new religious components into the overall religious program.

The RIC is to meet as necessary and maintain records of its recommendations.  Periodically, the RIC will issue summary reports and recommendations to all Chief Executive Officers.

P5360.09
12/31/2004
Page 9

(2) **Requests.**  Inmate requests are made by completing the New or Unfamiliar Religious Components Questionnaire form (BP-S822).  This form, along with sufficient documentation on which to base an informed decision, will be submitted to the chaplain for routing to the Central Office RIC through the Warden and Regional Director.

Upon completing the review, the RIC will make recommendations to the Warden regarding the request's appropriateness.  The Warden will determine the local disposition of the request after the institution receives the RIC recommendations.

(3) **Implementation of the RIC Recommendation.**  Decisions regarding the Chaplaincy Services program's expansion rest with the Warden and are subject to the institution's parameters for maintaining a safe and secure institution and availability of staff for supervision.

11.  [<u>SCHEDULES AND FACILITIES</u> §548.13

**a.  Under the general supervision of the warden, chaplains shall schedule and direct the institution's religious activities.]**

Current program schedules will be posted in English and Spanish on bulletin boards clearly visible to the inmate population.

**[b.  The warden may relieve an inmate from an institution program or assignment if a religious activity is also scheduled at that time.]**

In scheduling authorized religious activities, chaplains will consider both the availability of staff supervision and the need to share the time and space available among the eligible groups.

**[c.  Institutions shall have space designated for the conduct of religious activities.]**

This designated space will be sufficient to accommodate the needs of all religious groups in the inmate population fairly and equitably.  Chaplaincy Services areas (inside and outside) will be neutral and suitable for use by various faith groups.  The general area will include:

- office space for each chaplain;
- storage space for the needs of the religious programs; and

P5360.09
12/31/2004
Page 10

- proximity to lavatory facilities for staff and volunteers.

Management will make every possible effort to provide private office space for each chaplain.  One outside worship area will be maintained in a suitable, secure, and private location, except in institutions where building design or security considerations would prohibit its construction.  The single outside worship area should be large enough to accommodate all faith traditions requiring outside worship space.

12.  **[COMMUNITY INVOLVEMENT (VOLUNTEERS, CONTRACTORS) §548.14**

**a.  The institution's chaplain may contract with representatives of faith groups in the community to provide specific religious services which the chaplain cannot personally deliver due to, ordinarily, religious prescriptions or ecclesiastical constraints to which the chaplain adheres.]**

The term "representatives of faith groups" includes both clergy and spiritual advisors.  All contractual representatives of inmate faith groups will be afforded equal status and treatment to help inmates observe their religious beliefs, unless the security and orderly running of the institution warrants otherwise.  The volunteer must complete the Credentials of Religious Volunteer form (BP-S777) prior to his or her becoming a badged volunteer.  The form will be maintained in the Official Volunteer File.

**[b.  The institution chaplain may secure the services of volunteers to assist inmates in observing their religious beliefs.]**

Institutions unable to secure volunteers to meet religious needs may request a written waiver from the Regional Director.

Inmates may not place volunteers or contractors on their telephone lists or use the Inmate Telephone System to contact volunteers or contractors.  If a specific program need exists, the chaplain may facilitate and monitor a telephone call.  A Level I volunteer, a badged volunteer (Level II), or contractor will be neither a minister of record nor placed on an inmate's visiting list.

**[c.  The warden or the warden's designee (ordinarily the chaplain) may require a recognized representative of the faith group to verify a volunteer's or contractor's religious credentials prior to approving his or her entry into the institution.]**

Ordinarily, the credentials required for conducting worship services will be ordination.  In lieu of ordination credentials, adequate documentation of recognized religious and ministerial position in the faith community is required.

A qualified and credentialed non-citizen may be extended a religious services contract if permitted by the annual appropriations act and immigration law.

The prospective contractor must complete the Credentials of Religious Contractor form (BP-S778) prior to Bureau allocation of appropriated funds for a contract, whether for a one-time visit by Request for Purchase or multiple visits during the fiscal year, using the normal contracting procedures.  It will become part of the official Contractor Security File.

Ordinarily, inmates of any faith tradition will have access to their faith group's official representatives while in a SHU or hospital unit.  Usually this does not include hospitals that are outside the secure confines of the institution.  Inmates in SHU will make a written request to the chaplain for a visit with their faith representatives, and requests will be accommodated consistent with the terms of the representative's contract and the security and orderly running of the institution.

Faith group representatives will always be escorted in a SHU. As an alternative to facilitate supervision, the approved SHU visit may occur in the Visiting Room during regularly scheduled visiting hours.

13.  [**EQUITY §548.15.  No one may disparage the religious beliefs of an inmate, nor coerce or harass an inmate to change religious affiliation.  Attendance at all religious activities is voluntary and, unless otherwise specifically determined by the warden, open to all.**]

14.  [**INMATE RELIGIOUS PROPERTY §548.16**

   **a.  Inmate religious property includes but is not limited to rosaries and prayer beads, oils, prayer rugs, phylacteries, medicine pouches, and religious medallions.  Such items, which become part of an inmate's personal property, are subject to normal considerations of safety and security.  If necessary, their religious significance shall be verified by the chaplain prior to the warden's approval.**]

P5360.09
12/31/2004
Page 12

Personal religious items may not be purchased with appropriated funds.  All personal religious property will be purchased either from commissary stock or through an approved catalogue source using the Special Purpose Order process.  No religious item may have a monetary value greater than $100.

**[b.  An inmate ordinarily shall be allowed to wear or use personal religious items during religious services, ceremonies, and meetings in the chapel, unless the warden determines that the wearing or use of such items would threaten institution security, safety, or good order.  Upon request of the inmate, the warden may allow the wearing or use of certain religious items throughout the institution, consistent with considerations of security, safety, or good order.**

**The warden may request the chaplain to obtain direction from representatives of the inmate's faith group or other appropriate sources concerning the religious significance of the items.]**

Two types of headwear are identified, religious and ceremonial. Religious headwear is worn throughout the institution and ceremonial headwear may be worn only in the Chapel.  If additional religious or ceremonial headwear not listed is requested, the procedures outlined in Section 10.b., Introduction of New and Unfamiliar Religious Components, are to be followed.

(1)  **Religious Headwear.**  A standard color and style generally eliminates the necessity for the religious headwear permit cards.  The cards are discouraged because of the perceived connotation of religious discrimination and/or violations of religious freedom and privacy.

In order to achieve uniformity, inmates who have a SENTRY religious preference listed below are authorized to wear the following religious headwear throughout the institution including the SHU consistent with **[14b]** above:

| | | |
|---|---|---|
| Jewish | yarmulke | black or white |
| MST of A | kufi | black or white crochet cap |
| Muslim | kufi | black or white crochet cap |
| Nation of Islam | kufi | black or white crochet cap |
| Native American | headband | multi-colored |

| Rastafarian | crown | multi-colored (red, yellow, green threads running through a black cap) |
| Sikh | turban | white |

Headwear worn throughout the institution may not contain graphics or writing.  Crowns may not have a bill.  Headbands can be worn only in a circle, covering the forehead but not the crown of the head.  Inmates are authorized three items of religious headwear.

**Note:**    MST of A refers to the Moorish Science Temple of America.

(2)  **Ceremonial Headwear.**  In addition, inmates who have a pertinent SENTRY religious preference may wear the following ceremonial headwear in the Chapel.  These are not worn to and from the Chapel or in any other area of the institution:

| MST of A | fez | red |
| Odinist/Ásatrú | hlath (hlad) | brown with one or more embroidered runes |

The authorized hlath must contain embroidered runes.  Plain headbands without runes are not authorized.  Inmates are authorized one item of ceremonial headwear.

(3)  **Religious Attire for Women.**  Scarves and headwraps (hijabs) are appropriate for female inmates who have identified a religious SENTRY preference of Muslim, Jewish, Native American, Rastafarian, and those of the orthodox Christian tradition:

| Jewish | scarf | black or off-white |
| MST of A | scarf | black or off-white |
| Muslim | hijab | black or off-white |
| Nation of Islam | scarf | black or off-white |
| Rastafarian | scarf | black or off-white |
| Orthodox Christian | scarf | black or off-white |
| Native American | headband | multi-colored |

Inmates are authorized three scarves or headwraps.

Jumper dresses are always approved for women whose religion compels them to wear loose-fitting clothing for the sake of modesty.  Institutions housing females should have a supply of jumper dresses available in the laundry.

P5360.09
12/31/2004
Page 14

(4) **Ceremonial Clothing.** At the Warden's discretion, the following articles of personal religious clothing may be worn for services in the Chapel, but not on the compound, housing units or visiting room:

| | | |
|---|---|---|
| Jewish | kittel | a white prayer robe worn during some holiday services. |
| Muslim | kurta shirt | a knee-length shirt worn during the weekly Jumah service. |
| Native American | ribbon shirt | a multi-colored shirt worn during the Pow Wow. |
| Wicca | tabbared | a hoodless poncho or cape, earth brown color, worn during services. |

For Muslims, the shalwar (baggy pants) are not authorized. A jalabiyya (full-length robe) is not authorized. The kittel and kurta shirts are authorized for men only. The ribbon shirt and tabbared may be authorized for both men and women. Islamic inmates may not hem or wear their pants above the ankle.

(5) **Ritual Underclothing.** Temple garments and tzitzis are authorized for Mormon and Jewish inmates respectively. The Temple garments or ritual underclothing are authorized for Mormon (LDS) inmates. The tallis katan or tzitzis, a small four-cornered garment, is authorized for Jewish male inmates.

(6) **Transferable Religious Property.** A list of generally authorized and transferable inmate religious property is contained in the Practical Guidelines for Administration of Inmate Beliefs and Practices TRM. Additional personal religious property items may be approved locally by the Warden, but these must be sent home when transferring to another institution. Disposable headwear is made available in Receiving and Discharge for inmates requiring headwear while in transit.

**[c. An inmate who wishes to have religious books, magazines or periodicals must comply with the general rules of the institution regarding ordering, purchasing, retaining, and accumulating personal property. Religious literature is permitted in accordance with the procedures governing incoming publications. Distribution to inmates of religious literature purchased by or donated to the Bureau of Prisons is contingent upon the chaplain's granting his or her approval.]**

Inmates desiring to subscribe to religious periodicals or purchase religious books or literature may do so following procurement policy and procedures.  Retention of religious materials is governed by the provisions in the Program Statement on Inmate Personal Property.  Rejection of religious publications is governed by the procedures specified in the Program Statement on Incoming Publications.

Media resources purchased with appropriated funds will be provided equitably among the various religions.  All media materials must be religious in nature.  Material that is not considered religious in nature may not be procured through purchase or donation.  Media materials shall not denigrate or disparage any other religion or religious groups.  Donated religious media resources may be accepted in accordance with the Program Statement on Acceptance of Donations.

All media resources will be previewed by staff, or any other staff-designated volunteers, prior to distribution.

15.  [**WORK ASSIGNMENTS** §548.17.  **When the religious tenets of an inmate's faith are violated or jeopardized by a particular work assignment, a different work assignment ordinarily shall be made after it is requested in writing by the inmate, and the specific religious tenets have been verified by the chaplain.  Maintaining security, safety and good order in the institution are grounds for denial of such request for a different work assignment.]**

16.  [**OBSERVANCE OF RELIGIOUS HOLY DAYS** §548.18.  **Consistent with maintaining security, safety, and good order in the institution, the warden shall endeavor to facilitate the observance of important religious holy days which involve special fasts, dietary regulations, worship, or work proscription.  The inmate must submit a written request to the chaplain for time off from work to observe a religious holy day.  The warden may request the chaplain to consult with community representatives of the inmate's faith group and/or other appropriate sources to verify the religious significance of the requested observance.**

**The chaplain will work with requesting inmates to accommodate a proper observance of the holy day.  The warden will ordinarily allow an inmate to take earned vacation days, or to make up for missed work, or to change work assignments in order to facilitate the observance of the religious holy day.]**

P5360.09
12/31/2004
Page 16

The Central Office Chaplaincy Services Branch, CPD, maintains a general list of recognized holy days to identify days on which inmates of various faith groups may seek to be excused from work and school attendance.  The list is published annually in an Operations Memorandum (OM) but, because of the changing nature of religious observances, it is not exhaustive.  Requests for days off work and school attendance by members of religions not included in the above-mentioned OM are to be given due consideration and authorized by the Warden when appropriate.

Days free from work/school are determined by the religious community standards and ordinances of faith groups.  As such, the number of days off work for religious holy day observances is not limited to one per year.  Absent religious community information, the Bureau does not have the religious authority to determine whether inmates should be free from work/school for religious reasons on particular days.

**17.  [PASTORAL VISITS §548.19.  If requested by an inmate, the chaplain shall facilitate arrangements for pastoral visits by a clergy person or representative of the inmate's faith.**

**a.  The chaplain may request an NCIC check and documentation of such clergy person's or faith group representative's credentials.**

**b.  Pastoral visits may not be counted as social visits.  They will ordinarily take place in the visiting room during regular visiting hours.]**

(1)  **Minister of Record.**  For this section's purposes, the minister of record is defined as that spiritual leader, clergy person, or official representative, whom the inmate identifies and the chaplain verifies, as a minister of the inmate's religion of record.

An inmate will identify a minister of record by submitting a written request to the chaplain.  The clergy person the inmate identifies will also submit a request for consideration as the minister of record to the chaplain.  Following a review of the minister's credentials and appropriate security checks, the chaplain will request that unit staff place the identified clergy person on the inmate's visitor list as the minister of record. An inmate may only have one minister of record at a time.

The minister of record will not count against the total number of authorized social visitors an inmate is allowed to have on his or her visiting list.  Additionally, if the institution

uses a point system to monitor social visits, visits from the minister of record will not be counted against the total number of visits allowed.

(2) **Official Visits from Faith Representatives (Other than Minister of Record).** Visits from faith representatives other than the minister of record will be in accordance with the Program Statement on Visiting Regulations and may be counted against the total number of visits allowed. The faith representative's credentials and appropriate security checks will be reviewed prior to scheduling the visit. Refer to the Special Visits section of the Program Statement on Visiting Regulations.

(3) **Location.** Visits with the minister of record or other official faith representatives will be accommodated in the visiting room during regularly scheduled visiting hours, and to the extent practicable, in an area of the visiting room which provides a degree of separation from other visitors. Upon request, the visit may occur in a private visiting section contained in the visiting area if available.

- If space is not available, the visit may be rescheduled when private accommodations can be made in the visiting room during regularly scheduled visiting hours.

The Warden may limit the number of these official visits an inmate receives each month, based upon available resources.

18. [DIETARY PRACTICES §548.20

a. **The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu. The inmate will provide a written statement articulating the religious motivation for participation in the religious diet program.]**

(1) **Components.** The religious diet program, called the Alternative Diet Program, will consist of two distinct components:

- One component provides for religious dietary needs through self-selection from the main line, which includes a no-flesh option and access to the salad/hot bar (where the salad/hot bar is part of the Food

P5360.09
12/31/2004
Page 18

Service Program). In institutions where meals are served in prepared trays, local procedures will be established for providing the no-flesh component.

- The other component accommodates dietary needs through nationally recognized, religiously certified processed foods.

(2) **Requests and Interviews.** Inmates wishing to participate in the religious diet program will make the request in writing. Chaplains will ordinarily conduct the oral interview and complete the interview form within two working days of the request. When the interview is completed, the chaplaincy team will review the request to determine how to accommodate the inmate's stated religious dietary needs.

The inmate's interview responses will determine which component of the religious diet program best accommodates his or her religious dietary needs.

Inmates will review and sign a copy of the completed interview form. Chaplains will document an inmate's refusal to sign the document.

(3) **Notification.** Inmates will be notified on the Notification of Religious Diet Accommodation (BP-S700), of the religious diet for which they are approved, based on their religious dietary needs (BP-S700). Completed forms will be placed in section 6 of the Inmate Central File.

(4) **SENTRY Record.** The chaplain is responsible for entering pertinent information for each inmate approved to participate in the religious diet program into the SENTRY religious diet participant list within 24 hours of approval, under normal operations. Food Service will begin serving those approved for the certified processed food line normally within two days of SENTRY notification, under normal operations.

(5) **Monitoring.** Both chaplains and food service staff will monitor the SENTRY religious diet participant list daily to ensure that all eligible inmates are served religious diet meals with minimal delay upon intake or redesignation. Inmates who are not approved for the certified food line may request a re-interview at six-month intervals.

Chaplains will escort contract chaplains to the religious diet food preparation area randomly to monitor the preparation and serving of food items and compliance with religious dietary laws.

P5360.09
12/31/2004
Page 19

**[b.  An inmate who has been approved for a religious diet menu must notify the chaplain in writing if the inmate wishes to withdraw from the religious diet.  Approval for an inmate's religious diet may be withdrawn by the chaplain if the inmate is documented as being in violation of the terms of the religious diet program to which the inmate has agreed in writing.  In order to preserve the integrity and orderly operation of the religious diet program and to prevent fraud, inmates who withdraw (or are removed) may not be immediately reestablished back into the program.  The process of re-approving a religious diet for an inmate who voluntarily withdraws or who is removed ordinarily may extend up to thirty days.  Repeated withdrawals (voluntary or otherwise), however, may result in inmates being subjected to a waiting period of up to one year.]**

Prepared and wrapped trays will be provided for inmates approved for the certified food component.  Those who are observed eating from the main line may be removed temporarily from that component.  In addition, those who purchase and/or consume non-certified foods from the commissary may also be temporarily removed from that component.

The Warden has authority to remove inmates from and reinstate them to the program.  Ordinarily, this authority is delegated to the chaplains.  Inmates will be notified in writing (BP-S820) of a religious diet violation and potential removal from the religious diet program.  Removal is not punitive in nature but provides an opportunity for the inmate and staff to reevaluate this program's appropriateness to meet the inmate's demonstrated needs.  At the inmate's request for reinstatement, an oral interview will be conducted prior to reinstatement.

**[c.  The chaplain may arrange for inmate religious groups to have one appropriate ceremonial or commemorative meal each year for their members as identified by the religious preference reflected in the inmate's file.  An inmate may attend one religious ceremonial meal in a calendar year.]**

Ceremonial or commemorative meals will be served in the Food Service facilities, unless the Warden authorizes otherwise.  To maintain equity in menu design, all meals must be prepared from food items on the institution master menus.

Chaplains may use a small portion of the annual Chaplaincy Services budget to acquire traditional/ritual foods to supplement the mainline foods served for the ceremonial meal.  Ritual or traditional foods must be consistent with the faith group's religious dietary laws.

If purchasing ritual/traditional foods, a per capita equity
formula is to be determined locally.  To determine the per
capita cost, the total amount of appropriated funds designated
for this purpose shall be divided by the total number of inmates
participating in all ceremonial meals for the fiscal year.  To
prevent waste or abuse, the total amount per faith group is to be
no less than $10 nor greater than $200.

The Food Services Department is to be the only source of
procurement for all meal items.  Foods for ceremonial meals may
not be donated or catered.

An Inmate Request to Staff (BP-S148) must be submitted to the
chaplain 60 days before the ceremonial meal requesting
ritual/traditional foods.  The chaplain will consult with the
Food Service Administrator to develop the menu for each
ceremonial or commemorative meal at least 45 days before the
scheduled date of the observance.  This facilitates timely food
ordering and preparation.

   d.  **Religious Fasts.**  There are generally two different types
of fasts, a public and a private or personal fast.  When inmates
observe a public fast, i.e. one which is regulated by law or
custom for all the faith adherents, Food Service will provide a
meal nutritionally equivalent to the meal(s) missed.

Public fasts usually begin and end at specific times.
Accommodations may also be made for bagged meals at times when
Food Service is normally closed.  When an inmate fasts for
personal, religious reasons, no special accommodations need to be
made for the meal(s) missed.  Requests for meals after a personal
fast should be determined on a case-by-case basis, applying sound
correctional and pastoral judgment.

A list of public fast days is published annually in the OM on
religious holy days, but, because of the changing nature of
religious observances, it is not exhaustive.

19.  **ANNUAL REPORT.**  Each institution will submit an annual
report to the Chaplaincy Services Branch, CPD.  The reporting
year will be from October 1st through September 30th.  The
institutions will receive the report forms each September from
the Central Office Chaplaincy Branch.  The appropriate Associate
Warden and Warden will sign the report prior to forwarding the
report to the Regional Chaplaincy Administrator.

   ▪ A signed copy of the report will be retained in the
     chaplain's office.

P5360.09
12/31/2004
Page 21

The completed reports will be sent to the Regional Chaplaincy
Administrators by the third Friday in November and the Regional
Chaplaincy Administrators will forward the reports to the Central
Office Chaplaincy Branch by the second Friday of December.  The
Chaplaincy Services Branch will compile the information and
provide a summary report to the Regional Directors by the second
Friday of May.

20.  **INSTITUTION SUPPLEMENT.**  Each institution will develop an
Institution Supplement for operating religious programs and
activities.  The Institution Supplement requires the Regional
Director's approval prior to issuance and must include the
following:

a.  Procedures for serious illness and/or death notifications;

b.  Procedures for religious fasts, ceremonial meals and
whether appropriated funds will be used to supplement the
ceremonial meals with traditional/ritual foods;

c.  Reasons for removal from the religious diet program and
procedures for religious diet program reinstatement;

d.  Procedures for acquiring authorized religious items when no
catalog vendor is available (i.e. eagle feathers);

e.  Authorized religious property;

f.  Sweat Lodge procedures, including who may participate,
modesty/security requirements, and medical clearance requirements
if any;

g.  Procedures and limitations for pastoral visits for inmates
in general population and procedures for accommodating pastoral
visits for inmates in special housing or hospital units;

h.  Procedures and limitations for storage and provision of
religious wine;

i.  Indoor and outdoor areas authorized and designated for the
ritual use of tobacco; and

j.  Where applicable, procedures for procuring, storing, and
using tobacco for rituals.

21. **BUREAU OF PRISONS FORMS.** The following BP-Forms will be used in conjunction with this Program Statement:

- Questionnaire Regarding New or Unfamiliar Religious Components (BP-S822)

- Notification of Religious Diet Accommodation (BP-S700)

- Credentials Religious Volunteer (BP-S777)

- Credentials Religious Contractor (BP-S778)

- Notification of Religious Diet Violation (BP-S820)

22. **IMPLEMENTATION.** Implementation of this Program Statement will occur within 90 days of the effective date of this policy.


/s/
Harley G. Lappin
Director