Ryan Poullard  Reg. #06429-078
(Shangowande Orunmila)
P.O. Box 26020
Beaumont, TX 77720-6020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ryan Poullard                         )
(Shangowande Orunmila),               )
          Plaintiff,              )
                                      )
v.                                    )   Civil Action No.  05-1768 (HHK)
                                      )
HARLEY LAPPIN, et al.,                )
          Defendants.             )

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO TRANSFER AND
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

COMES NOW, Ryan Poullard (Shangowande Orunmila), Plaintiff, pro se in the above captioned cause, and moves the Court to enter its Order denying Defendants' Motion to Dismiss or, in the Alternative, for summary Judgment or to Transfer. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff also files this Cross-Motion for Summary Judgment against the Defendants on the grounds that there are no Material facts in dispute between the parties and that as a matter of law, Plaintiff is entitled to relief.

This motion would show the Court the following:

I.

In Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer, Counsel for the Defendants states "It is clear that transfer, pursuant to § 1404(a) would preserve resources and serve the interests of justice." See Defendants' Motion at II A, page 6. To support this erroneous conclusion, Counsel for the Defendants called the court's attention to "a Complaint in the United States District Court for the Eastern District of Texas which addresses his (Plaintiff's) 'right to use his religious name.'" Id. Though transfer would "preserve resources"

for the Defendants, it would hinder the "interests of justice" for the Plaintiff.

More than a year prior to the filing of Civil Action No. 1:06-CV-82, a letter was written by the Plaintiff to the United States Attorney for the Eastern District of Texas. This letter addressed the ongoing violations that were being committed by staff members at Plaintiff's place of incarceration and it was forwarded via certified mail return receipt requested. (attached hereto as Exhibit A). This situation poses a serious threat to justice and the Plaintiff has made the United States District Court for the Eastern District of Texas aware. To "serve the interests of justice," Defendants' prayer for transfer must be denied.

II.

BOP Program Statement 1040.04 entitled Non-Discrimination Toward Inmates, paragraph 1, states the following:

"Bureau staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or political belief. This includes the making of administrative decisions and providing access to work, housing and programs." (emphasis added). Beginning in the fourth week of September 2004, Plaintiff made numerous attempts to resolve a variety of sensitive religious issues through the Bureau's Administrative Remedy Program. On every occasion, institution Administrative Remedy Coordinator James Premo denied the Plaintiff all access to this program for Plaintiff's use of his religious and committed names. Plaintiff addressed this discrimination on the basis of religion in a Request for Administrative Remedy dated March 30, 2006. (attached hereto as Exhibit B).

Referring to the Administrative Remedy Program, Counsel for the Defendants stated "Under this program, 'an inmate must first present an issue of concern informally to staff' in order to attempt resolution." See Defendants' Motion at II B (1), page 8. In footnote number 4 on the same page, Counsel for the Defendants provides the Court with one of the many half-truths that are dispersed throughout

Defendants' Motion. Subtly alluding to the additional page attached to Remedy I.D. 370051-F1, Counsel for the Defendants craftily quotes a portion of 28 C.F.R. § 542.14(c)(3). "The inmate must complete the form with all requested identifying information and shall state the complaint in the space provided on the form." Id. The next two sentences, which were omitted by Defense Counsel, state the following: "If more space is needed, the inmate may use up to one letter-size ($8\frac{1}{2}$" by 11") continuation page. The inmate must provide an additional copy of any continuation page."

Defense Counsel then proceeds from half-truth to untruth. Relying upon the Declaration of Bruce Plumley as evidence, Counsel states that "A record of an inmate's 'attempt to informally resolve [the issue is] **signed by the inmate** and a member of the Unit Team, and maintained in a centralized file.'" Id. This signing of Informal Resolution Attempts by inmates is neither mentioned in the Code of Federal Regulations, nor Administrative Remedy Program Statement 1330.13. In fact, the Informal Resolution Attempt form that is used at Plaintiff's place of incarceration does not even have a space for inmate signatures. (attached hereto as Exhibit C).

Plaintiff has, and is still trying to comply with the Informal Resolution Attempt requirement mentioned in Defendants' Motion, but institution staff are absolutely refusing to process Plaintiff's attempts. These attempts are accepted by staff and then held without being processed, as was done with the Informal Resolution Attempt that was included in Plaintiff's Complaint. To show the Courts how long these attempts were being held, Plaintiff began dating and signing all of his attempts. (attached hereto as Exhibit D). After receiving Defendants' Motion, Plaintiff submitted another Informal Resolution Attempt regarding the March 3, 2005, incident to give the Court an up to date example of the ongoing discrimination that he is being subjected to. (attached hereto as Exhibit E).

Per Administrative Remedy Program standards, "The Warden is responsible for

-3-

ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff. These procedures may not operate to limit inmate access to formal filing of a Request." (emphasis added) See P.S. 1330.13, page 4, ¶ 7a.

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust their administrative remedies before filing a civil action concerning conditions of confinement and the actions of the Defendants in this case, like institution and regional staff, have served as attempts to obstruct Plaintiff's meeting of this requirement. Thus, Defendants' arguments as found at II, ¶ B 1, in Defendants' Motion are without merit and Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer must be denied. Further, the evidence presented herein clearly establishes Plaintiff's entitlement to summary judgment on the issue of "Exhaustion and Administrative Requirements."

III.

The argument entitled "Plaintiff's Conduct" found at II, ¶ B 2, in Defendants' Motion is either the product of Defense Counsel's confusion, or it is in fact an attempt to confuse the Court. On pages 9 and 10 of this section, Counsel for the Defendants explains how Chaplain Jon Woods instructed all faith groups that their members _must_ sign chapel sign-in sheets, and that this signing _must_ be with committed names _only_. Counsel concludes this explanation by stating "Chaplain Woods informed the inmates that an incident report would be completed for any individual who failed to comply." Id.

On March 4, 2006, incident reports were written for several members of the Sunni Muslim faith group "who failed to comply." (attached hereto as Exhibit F). These failures to comply were handled in a remarkably different manner. Unlike the Plaintiff, these Sunni Muslims were not handcuffed in the center of the Religious Services Department, they were not confined to the Special Housing Unit for eight

-4-

days, and they were not sanctioned. The incident reports on members of the Sunni Muslim community were dropped while the Plaintiff's sincerely held religious beliefs were treated with contempt and disdain.

On page 10 of Defendants' Motion Counsel for the Defendants states the following: "BOP records reflect that, on March 23, 2005, plaintiff filed an Administrative Remedy Request, at the institutional level, seeking expungement of the incident report. The records also reflect that plaintiff signed the Administrative Remedy Request with his religious name only. On March 16, 2005, plaintiff's Administrative Remedy Request was rejected because he did not sign his request." (internal citations and quotation marks omitted). Id.

Counsel for the Defendants is playing games with the time and integrity of this honorable United States District Court for the District of Columbia. Defense Counsel expects the Court to believe that Plaintiff's Administrative Remedy Request was rejected seven days before it was submitted. This statement is absurd and it evidences the frivolity of the Defendants arguments. Additionally, the regional and Central offices, in their rejections of Plaintiff's appeals, both asserted that the Plaintiff "did not attempt informal resolution." Even if Defense Counsel accidentally overlooked the fact that the institution's rejection notice made no mention whatsoever of "informal resolution," it is an insult to the gravity of these proceedings for the Defendants to expect the Court to disregard the appeal instructions that are listed in section 18C of all incident reports.

After being formally sanctioned, inmates are to be advised of "the right to file an Appeal within 15 calendar days." See Section 18C of Exhibit F. The words "attempt informal resolution" are found nowhere on this form, and the Administrative Remedy Request is the only formal appeal method that the Plaintiff is aware of. Plaintiff made several attempts to follow these instructions in good faith, but all of his attempts were treated with scorn. The evidence is clear. Defendants' Motion

-5-

to Dismiss or, in the Alternative, for Summary Judgment or to Transfer must be denied and Plaintiff should be granted summary judgment.

## IV.

In Felix v. Rolan, the Fifth Circuit determined that "[t]he adoption of Muslim names by inmates practicing that religion is generally recognized to be an exercise of both first amendment speech and religious freedom." 833 F.2d at 518 (citing Barrett, 689 F.2d 498; Akbar v. Canney, 634 F.2d 339 (6th Cir. 1980) (per curiam), cert. denied, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981)). Applying strict scrutiny to a prison regulation that required inmates to use their committed name at least in conjunction with their religious name, the Fifth Circuit reached the following conclusion:

The state's legitimate interest in prison security requires an efficient system of identification and administration of prisoners within its custody. So, while the state cannot reasonably deny prisoners privileges simply because they have chosen to adopt a new name, the use of their "committed name," as an alias for the purpose of identification of the prisoner, does not of itself violate the prisoner's constitutional rights. See Fawaad v. Jones 81 F.3d 1084, 1087 (11th Cir. 1996).

In this case the Defendants are going beyond denying the Plaintiff privileges simply because he has "chosen to adopt a new name," they are in essence attempting to deny the Plaintiff all access to the Administrative Remedy Program, which according to the requirements of the Prison Litigation Reform Act, would ultimately act as a denial of access to the Courts. This attempt must fail. Fawaad, Felix, and Malik are all cases that deal with the religious name issue as it pertains to the Muslim faith. This case differs significantly because the Plaintiff is a devotee of Ifa and whereas Muslims are permitted to choose their own names, devotees of Ifa must receive their names from members of the Ifa priesthood.

The bestowal of surnames is not a rite to be taken lightly, or rushed by insensitive prison officials, for this name will be passed on to the future

-6-

generations of the devotee. There must be a great deal of trust and confidence in the priest and/or priestess, and the devotee has the right to choose a member of the priesthood that is to his or her liking. The only member of the priesthood that the Plaintiff has confidence in is unable to perform this rite due to the distance of her residence from the Plaintiff's place of incarceration. Additionally, the institution still has not provided the accommodations and materials that will be needed for the requisite initiation and naming ceremony.

These factors, which are beyond the Plaintiff's control, cannot be held against the Plaintiff nor can they be used by the Defendants to prevent the Plaintiff from exercising a sincerely held religious belief that calls for the adoption of a religious name, though it be temporary. An outright ban on Plaintiff's use of a temporary religious name under these unique circumstances is not the least restrictive means of furthering a compelling governmental interest. Plaintiff is therefore entitled to summary judgment and Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer must be denied.

V.

In an insult to the Plaintiff's sincerely held religious beliefs, Counsel for the Defendants stated the following:

"In fact, most recently, plaintiff changed his religious affiliation from the Nation of Islam to 'Other.' In light of that, it does not appear that plaintiff has a sincerely held religious belief in the Nation of Islam or in the necessity of using his religious name on all documents." See Defendants' Motion at IV, ¶ B(1), page 19. This statement borders upon perjury. Plaintiff did not "change his religious affiliation from that of the Nation of Islam to 'Other.'" In the last week of September 2004, the Plaintiff received the official Ifa approval letter which authorized the introduction of "Ifa" at FCI Beaumont (Low). (attached hereto as Exhibit G). Shortly thereafter the Plaintiff and several other devotees of Ifa submitted Inmate Requests to Staff which asked that their religious Sentry assignments

-7-

be changed to Ifa. The response to these requests proves that Religious Services Department staff changed the Plaintiff's religious affiliation to "Other" in contravention of his request that it be changed to Ifa. (attached hereto as Exhibit H).

Counsel for the Defendants also claims that "On August 25, 2005, plaintiff affiliated himself with the Nation of Islam. Less than two months after that, on October 19, 2004, plaintiff changed his religion back to Other." (internal citations and quotation marks omitted). Id. Perhaps Defense Counsel expects the Court to believe that October 19, 2004 is two months after August 25, 2005. These arguments are altogether frivolous. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer must be denied, and Plaintiff should be granted summary judgment.

VI.

An argument entitled "The Government has not substantially burdened plaintiff's belief" in Defendants' Motion alleges the following:

"Plaintiff asserts that the BOP has prevented him from receiving his final religious name because BOP has not allowed the religious ceremony that will give him a final religious name to take place. In order for the ceremony to take place, plaintiff is required to provide chaplaincy with the names of the priests who will conduct the name-change ceremony. Declaration of James Watanabe. Plaintiff produced the name of the priest and has been allowed to start the preparation process required to change his name. Religious Services at the institution has instructed the priest to start the preparation process for the religious name changing ceremony for plaintiff. Clearly, the government is not precluding plaintiff from receiving his final religious name which, upon taking appropriate steps, he can use on prison documentation." See Defendants' Motion at IV, ¶ B(2), pages 21 & 22. The Defendants have now entered the realm of perjury.

During the month of February 2005, a Mr. Ifakorede Awoyefa wrote a personal

-8-

letter to the Plaintiff after having received his contact information from Plaintiff's sister, "Kristin." (attached hereto as Exhibit I). On April 27, 2005, this same Mr. Ifakorede Awoyefa was added to Plaintiff's Inmate Visitor List. In a declaration made under penalty of perjury, Chaplain James Watanabe stated "Inmate Poullard has produced the name of an Ifa priest, Mr. Ifakorede Awoyefa." See Exhibit I of Defendants' Motion at ¶ 5. Chaplain James Watanabe has obviously gone mad, because this statement immediately follows a paragraph that is utterly false in its entirety. See Exhibit I of Defendants' Motion at ¶ 4.

Plaintiff was never informed by Religious Services Department staff "that, if he requires a religious ceremony to receive his permanent religious name, a priest must be present, and he must provide institution staff with the name of the priest who will perform the ceremony." Id. Moreover, Plaintiff's production of Mr. Awoyefa's name was in no way related to the performance of "a religious ceremony to receive his permanent religious name." In an attempt to pay some semblance of respect to the Ifa holy days that were being ignored by Chaplain Watanabe, Plaintiff and the members of his faith group planned a Black History program as a "Oya holy day" substitute. Chaplain Watanabe instructed the Plaintiff to seek the Warden's permission for this program. (Exhibit J attached hereto). Plaintiff produced Mr. Awoyefa's name as a potential guest speaker for this program only. However, Plaintiff's request related to this speaking engagement was ignored and Chaplain Watanabe, without Plaintiff's knowledge or permission, "requested Mr. Awoyefa to enter the institution and instruct the Ifa/Yoruba inmates." See Exhibit I of Defendants' Motion at ¶ 5. Plaintiff's Inmate Request to Staff dated September 7, 2006, explains how Mr. Awoyefa inadvertently became the Religious Services Department's "Ifa priest." (attached hereto as Exhibit K).

The Defendants in this case are in fact trying to put one over on this honorable United States District Court. Defense Counsel alleges that Plaintiff's use of his temporary religious name "would cause great difficulties for a prison in its attempt

to maintain **prison security**." (emphasis added)  See Defendants' Motion at IV, ¶ B(3), page 24.  Defendants' argue a compelling government interest "to maintain prison security," while Religious Services "is in the process of establishing Mr. Awoyefa as a class 2 volunteer" at Plaintiff's place of incarceration.  If maintaining prison security was indeed the government's aim in this case, the Defendants would have noticed that Mr. Awoyefa is still presently on Plaintiff's visiting list.  (attached hereto as Exhibit L).  The Defendants are screaming security while actively supporting a breach of security.  Consequently, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer must be denied and Plaintiff is entitled to summary judgment.

## VII.

According to the Defendants, "Requiring inmates to use their committed name until they have legally changed their names is the least restrictive means" of furthering its security interests.  See Defendants' Motion at IV, ¶ B(4), page 25.  This method is not the least restrictive means, it is an outright ban on the adoption of religious names by Ifa devotees who are waiting to find trustworthy and sincere members of the Ifa priesthood.  "A substantial burden exists 'where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  See Sample v. Lappin 424 F.Supp. 2d 187, 193 (D.D.C. 2006).  The use of Plaintiff's religious name, though it be temporary, in conjunction with his committed name would both satisfy the governments accountability interests and permit the Plaintiff to freely exercise his sincerely held religious beliefs.  This dual name method is the least restrictive means of furthering the governments compelling interests.  Therefore, Plaintiff should be granted summary judgment and Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment or to Transfer must be denied.

VIII.

Defendants claim that "there is no controversy which warrants the issue of a declaratory judgment, much less one of sufficient immediacy." See Defendants' Motion at V, page 27. This is error. Plaintiff is still presently being denied access to the BOP's Administrative Remedy Program for using both his religious and committed names, and this continued denial would ultimately act as an obstruction to Plaintiff's access to the Courts by way of the Prison Litigation Reform Act's (PLRA) exhaustion of Administrative Remedy requirement. A controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment is present in this case, and Plaintiff is entitled to such relief. See Chaplaincy of Full Gospel Churches, et al. v. Johnson, 276 F.Supp.2d 79, 81 (D.D.C. 2003). Summary judgment should therefore be granted the Plaintiff and Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer must be denied.

**CONCLUSION**

As the evidence presented herein has proven, none of the arguments employed in Defendants' Motion are legally sound, and some of these arguments go as far as to rely solely upon deceitful statements made by Chaplain James Watanabe while under penalty of perjury. Accordingly, Plaintiff respectfully prays an Order of the Court denying Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer. Finally, as there are no material facts in dispute between the parties, Plaintiff respectfully requests that the Court grant summary judgment in his favor.

Respectfully submitted on this 1st day of November, 2006.

Ryan Poullard
(Shangowande Orunmila)
Plaintiff, pro se